Mr. McCallion Good morning. Ken McCallion on behalf of the approximately $1.4 billion was forfeited by the battle organization Enlac Corporacion, Cuban-American group. And the success of that case, which not only led to a substantial forfeiture, but also the conviction of the leaders of that racketeering organization and many of its lower-level members, in addition to the leadership, was largely due through the efforts. At JA-121 in the complaint, you cite to the Attorney General's confidential informant guidelines. What pages or page of those guidelines makes it clear that the Assistant United States Attorneys, U.S. Department of State agents, or local police officers, have either expressed or implied authority to engage in a best efforts agreement? The appendix won't tell you. It just references the Attorney General's confidential informant guidelines. Where are they? The confidential guidelines, a portion of it is attached to the appendix, but along with those confidential guidelines have to be read in the existing case law relating to those guidelines and the operations, SAIL, Marquette, SCJ. Are you going to answer my question? What portion of the guidelines makes it clear that AUSA's Department of State agents and so on have either the express or implied authority to engage in those agreements? It would be the portions of the guideline, not in hot verba, but the guidelines basically say that... Well, several provisions would have to be read together, but it does not say in hot verba that an AUSA... The guidelines to which you're referring, the provisions, they have to be read together. The provisions of the definition of confidential informant, appendix 191, sub 6, the appendix 193, 13, confidential informant review committee. Say again? Confidential informant review committee. And I can't immediately find it, the provision that says an award will be commensurate with the contribution by the confidential informant. I don't have that immediately available. And from those three, you say the guidelines make clear that AUSA's have that authority? If we said that, I meant to say that case law is firmly established in the SAIL case SCG Marquette, that agents can do what they have inherent power and ability to do if it relates to their essential functions, using the language of SAIL. One of the essential functions of an agent in an AUSA is to solicit the cooperation of confidential informants and cooperating witnesses. Without that, the justice system and law enforcement operations are severely hampered and it would have a chilling effect. But I don't understand where, even if that is part of their job description, that that means that they have the authority to enter into contracts that will result in the payment of money. That's a separate issue. You can enter into an informant agreement with a witness without agreeing to make any efforts to pay money. That's true. And an agent in an AUSA can't promise to pay money. What they can do is promise to make best efforts to support an award if the investigation is successful. In this case, if monies are forfeited, then and only then, all the USA has to do and the agent, in this case, two or three different agencies, the Department of Justice and the Department of State, all they have to do is make a good faith, best efforts recommendation. But that agreement only provides a claim in the Court of Federal Claims if it can be read to mandate the payment of money. And if they have no authority to agree to make any best efforts to pay money, and you have to show that they have authority to agree to pay money, which you haven't done. Respectfully, I think the answer to that is no. There's two types of agreements, and SCG pointed this out. In that particular case, the court found that the princess, the informant, argued that she had been opposed to a best efforts agreement, which the court indicated it seems it was more of a best efforts agreement. The court acknowledged, and the court's also in sale, this court in sale, and other cases has held that a best efforts agreement is different from an ironclad promise to pay. And that's the way the forfeiture system works. That's the way the guideline system works. That's the way the Department of Justice forfeiture system works. The first thing that the committee reviewing it considers is what is the recommendation of the line agents and the AUSA who worked on that particular case. Is a best effort an obligation to pay? Absolutely not. In New Valley... Well, if it's not an obligation to pay, then it can't form the basis for a claim for money in the Court of Federal Claims. Well, it's a claim for a breach of the implied covenant of good faith and fair dealing in that contract. New Valley pointed out the distinction. It wasn't an agent case. It doesn't matter. It still has to be a claim for money. Yes, it is. And the agents that entered into those have to have the authority to enter into binding agreements that will result in the payment of money. Whether they can agree to a specific sum or they can agree to make best efforts to secure a specific sum. Yes, and the agents... Can you point to any provision that says AUSAs or any of these other people have that kind of authority? Because my understanding is that kind of authority is maintained at a very high level at the Justice Department and at other agencies. That is the power to pay. What an agent and an AUSA have the power to do is say, we're the line agents. We've worked with this informant. He has cooperated. He's cooperated fully. In this case, he cooperated with astronomically positive results. And we therefore recommend consistent with what we should do as AUSAs or as agents, but certainly consistent with our promise to the informant at the time he came into us. We're not promising you any money. But we're promising that if this case is successful and there's a forfeiture, we will attempt to make you whole. In this case, it was the $106,000 that the corporation owed to him for his past services, a very modest amount in view of the $1.4 billion forfeiture. There was no promise to pay that. However, there was a good faith and implied covenant of good faith and fair dealing that if the informant did what he was going to do, and he did this for year after year after year, he testified. Doesn't the covenant of good faith and fair dealing depend upon an otherwise enforceable contract for money within the Court of Federal Claims? Yes. But you don't have an enforceable contract for the payment of money. We've already conceded that. In SCG sale and other cases, and even in New Valley case dealing with the launching of a satellite, there's a difference between a promise to launch a satellite, or in this case a promise to pay money, and a promise to make a good faith effort to launch that satellite, or in this case, support a recommendation and award. In this particular case, the agents, or the AUSA later involved, actually after soliciting Mr. Marchena's cooperation and getting the benefit of that, and there being institutional ratification over a period of years, whereby they continued to reassure him that yes, once the forfeiture money comes in... Are you saying, this sounds like a different theory, that somebody with authority has ratified this agreement? Oh, absolutely. Well, the AUSA... No, I mean, the AUSA does not have authority to pay money. I thought you just said that there was institutional ratification, which to me suggested that you were saying somebody with authority ratified this agreement. You're not saying that, that anybody with contracting authority, either at the Justice Department or at any other agency, has ratified this agreement, have you? No, someone with recommending authority, the AUSA and his superiors. In fact, the second AUSA on the case, Ellison Lair, actually went and drafted the recommendation and the application for Mr. Marchena, after recommending that he fire his attorney, Attorney Spitler. In essence, Ellison Lair, the AUSA, then became not only the representative of the government, but the attorney for Mr. Marchena. And when the application languished for a period of time, she then rehired Attorney Spitler, who filed his own recommendation, and the government opposed it at that point. There's the fundamental agreement to, in good faith, enter, make recommendations without any promise of money. We would suggest, and particularly that cases such as Sale, Marquette, SCG, the language of that makes it clear that there are good faith agreements short of an absolute promise to pay money, but an agreement to make a recommendation for the payment of money, which are inherently enforceable. And in this case, Mr. Marchena relied to his detriment on the representations of the government agents in this regard. You're well into your rebuttal. Oh, I'm sorry. If you have a final point, or we want to turn to the... I'll reserve. Thank you. May it please the court. The trial court correctly concluded that Mr. Marchena failed to plead the existence of a binding contract with officials authorized... Is there any support for the notion that entry into a best efforts agreement by someone otherwise without authority to bind the government for money can support a claim in the Court of Federal Claims? No, Your Honor. The SGS case, the Princess case that my friend has referenced, made in dicta, which appellant has called dicta as well, a reference to... The examination there was whether that was, in fact, a binding promise to pay money, and the court found that it was not. It said there may have been some sort of agreement of the type of a trustless agreement. We'll do our best to help you out, but solely that reference is the only reference there. The court never considered authority to make such a binding contract or actually held that there was such a binding contract. I'm confused now because your opposing counsel tells me that the United States was representing Mr. Marchena for a while there. That's not in the pleadings, and not to my knowledge was that ever the case. There are allegations that AUSAs or other agents of the government made recommendations to Mr. Marchena to fire his counsel. We never got to the stage of the proceedings to determine factual accuracy of any of those, but they're irrelevant to this appeal, of course, because as Judge Hughes has noted, there has to be authority to bind the government, and that's what my friend wants to skip over. They talk about, well, of course, they can promise. Well, that's already been conceded. Understood, Your Honor. And so because this theory sort of relies on this sort of bank shot that would say because I promise that I'll do my best to get someone else who does have authority to do a particular thing, there can't be jurisdiction and there can't be the existence of a binding contract in the Court of Federal Claims. Now, my friend also references two potential theories of authority which could apply in certain cases, those being express authority as delegated by the Constitution, a statute or a regulation, and as the Court has noted, none of the regulations or statutes referenced in the briefing by my friend delegate that authority to AUSAs or any of the individual officials at issue here. In terms of an implied authority theory, that would require, as my friend referenced, that it's inherent to the duties of these individuals that they must have this authority in order to do their jobs. In fact, the Court of Federal Claims has looked at exactly this scenario on a number of occasions and found exactly the opposite. They have found that individual law enforcement officers do not have, as an inherent portion of their duties, the inherent authority to bind the government in contracts to pay confidential... Aren't these types of delegations authority written down? They are, Your Honor. Are they in confidential memoranda or are they just in internal memoranda at the Justice Department and at the agencies? I imagine that they are internal. I don't know the answer to whether they are confidential. You didn't attach any of these delegations to your motion? No, Your Honor. I'm not aware of any. Importantly, for the posture of this case, there's no allegation in any of the versions of the complaint that any of these individuals were delegated authority to bind the government. And to finish my point on the Court of Federal Claims case law on inherent authority, the key point there was there is authority with individuals in the Justice Department that can delegate this down in specific cases to make a deal with a confidential informant. And that's the proper means by which to achieve this. What's that level? The statutes typically vest that authority in the Attorney General or in the case... Or a delegee. Who is the person? I don't know the specific delegees. It's typically at the Assistant Attorney General or in some cases Deputy Assistant Attorney General level. There are a number of different funds that I think have different delegations. But I'm not aware of all of them at the moment, Your Honor. So if there's any further questions, Your Honors, the United States respectfully requests that this Court affirm the decision of the trial court. Now, in the lower court, the court did find that agents in the USA have authority to make recommendations. But drew a distinction, we believe for the first time in any case law, between recommendations to another agency, which the court found could be proper and authorized to make recommendations as opposed to an agent or an AUSA's own agency. We believe that this distinction is not supported by the case law and is contrary to the practice, certainly, of any agency looking to its own agents for a recommendation as to the success or contribution of a confidential informant. I would also point out that in this particular case, one of the agents who did make this best efforts promise to help this individual informant out if the case was successful was from the Department of State, not the Department of Justice. So there's a distinction there. But just on this inherent power issue, I would draw the court's attention to cases such as Henke, where the court found that there may not have been a binding agreement to pay Henke a guaranteed sum of $250,000, but there was authority to enter into an agreement that if the mission was successful, he, a fellow DEA agent, was committed to trying to get Henke paid. This is the kind of best efforts agreement which case law supports both Henke, the sale case, which talks about an agent and an AUSA's inherent authority. I don't see that cited in your brief, that case. Well, the Henke case is cited in the government's brief for other issues. I was just rereading it and at page 25, 43, Federal Court of Claims at 25 is the language I just quoted. If it's not in our brief, I apologize, but it is case law here and it does echo SGS which also says that SACs and ASACs let's see, this is SCG at 701 to 704 SACs can promise to do their best to assist and aid a confidential informant in every possible way but they cannot make a promise to make a specific payment of a specific sum of money. That's why the SCG knocks you out of court. I'm sorry, the SCG case draws that distinction and basically suggests that in that case, the princess was overreaching. She was saying there was a promise to pay when what she really should have been arguing and which the court found was appropriate would be recommendations for payment without any absolute guarantee. That's a Court of Federal Claims case, right? That and the Henke case are both Court of Federal Claims cases. They are, yes. But they're not binding on us. No, but I would hope persuasive to the court regarding this appeal from a denial of an essential confidential informant's claim that the government not only didn't make the best efforts but subverted and opposed a recommendation by him after he had performed and all the other elements of a contract including consideration had been performed as found by the lower court.